IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JAMES LUCAS,

    Plaintiff,

v.                                                     Case No. 2:17-cv-03894

DAVID BALLARD, Warden, MOCC,
LOITA BUTCHER, DOC Commissioner,
and JEFF SANDY, Secretary, D-MAPS,

    Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to a Standing Order (ECF No. 3), this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## PROCEDURAL HISTORY

The plaintiff, James Lucas, is an inmate at the Mount Olive Correctional Center ("MOCC"), having been convicted of two counts of sexual assault in the first degree, two counts of sexual abuse by a parent, guardian, custodian, or other person in position of trust to a child, and two counts of incest, in the Circuit Court of Marion County. *See State v. Lucas*, No. 99-F-190 (Marion Cty. Cir. Ct.); *see also* West Virginia Division of Corrections Inmate Locator database, https://apps.wv.gov/ois/offendersearch/doc.

According to the Complaint, the plaintiff was a longtime member of a bluegrass band at MOCC. (ECF No. 1 at 5-8). However, on March 20, 2017, a MOCC staff member

barred the plaintiff's bandmate from utilizing MOCC's band room and participating in the music program for not being "IRPP compliant."[1] (*Id.* at 7–8). Thereafter, the plaintiff also lost his band room privileges for not being IRPP compliant. (*Id.* at 8).

The plaintiff alleges that, at the time, there was no official written MOCC or West Virginia Division of Corrections ("WVDOC") policy linking band room privileges with being IRPP compliant. (*Id.* at 8). The plaintiff further alleges that, in order to be considered IRPP compliant, inmates are required to participate in a class which mandates that they "take responsibility" for the crimes of which they were adjudged guilty. (*Id.* at 5). Thus, in sum, the plaintiff alleges that he is required to admit his guilt in order to utilize the band room.

On August 30, 2017, the plaintiff initiated this action against David Ballard, the Warden at MOCC, Loita Butcher, who was then the WVDOC Commissioner, and Jeff Sandy, the Secretary of the Department of Military Affairs and Public Safety. (*Id.* at 1). The Complaint alleges that the defendants violated the plaintiff's Fifth Amendment right against self-incrimination by punishing him for not participating in a class that required him to admit his guilt, and violated the Due Process Clause of the Fourteenth Amendment by punishing him for not taking a class that was not mandatory. (*Id.* at 5–8). The plaintiff requests that this court declare unconstitutional the policy requiring IRPP compliance in order to have the privilege of using the band room and reinstate the plaintiff and his bandmates to the music program. (*Id.* at 8).

On June 19, 2018, the plaintiff filed an "Amendment and Supplemental to Above Cited Action," in which he asserts that, on June 2, 2018, the Oak Hall Unit Manager made

---

1 "IRPP" stands for "Individual Reentry Program Plan." *See Longwell v. Ballard*, No. 11-0912, 2012 WL 5232243, *1 (W. Va. Oct. 19, 2012).

a pronouncement to inmates that MOCC is going to "move nonviolent, lower-security-level 3 inmates who, for whatever reason have refused classes, into the two dorms that house the more dangerous level 4 and 5 inmates." (ECF No. 5 at 1). The plaintiff claims that this proposition "displays deliberate indifference on the part of MOCC toward the safety of the more defenseless inmates, because every administrator in this prison – from the lowly POD Unit Manager to the Warden – knows that ilk of vindictive 'punishment' could easily cost an inmate his life. At the very least, it will result in more beatings, inmate-on-inmate thefts, shakedowns, strong-arming groceries, and 'rent collection." (*Id.* at 1-2).

## STANDARD OF REVIEW

Pursuant to the provisions of 28 U.S.C. § 1915A, the court is obliged to screen each case in which a prisoner seeks redress from a governmental entity, and must dismiss the case if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(a) and (b). A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory. *Denton v. Hernandez*, 504 U.S. 25 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints. However, the court may not re-write the pleading to develop the plaintiff's legal theories for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a

3

case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case. The Court wrote:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted). Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*, at 556.
>
> * * *
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50. This standard applies equally to the initial screening conducted under 28 U.S.C. § 1915A, where no Motion to Dismiss has been filed.

## ANALYSIS

### A.  Fifth Amendment Claim

The plaintiff alleges that the defendants violated his Fifth Amendment right against self-incrimination by banning him from utilizing the band room or participating in MOCC's band program for not being IRPP compliant, when he could not become IRPP compliant without taking a class that required him to take responsibility for his crimes. On a very similar set of facts, the Supreme Court has held that prison officials do not violate the Fifth Amendment by imposing adverse consequences on prisoners who refuse to participate in programs that require them to admit their guilt. *McKune v. Lile*, 536 U.S. 24, 48 (2002).

In *McKune*, Robert Lile, was convicted of rape and related crimes. *Id.* at 29. A few years before his scheduled release from prison, prison officials recommended that Lile participate in a Sexual Abuse Treatment Program, in which he was required to complete and sign an "Admission of Responsibility" form stating that he accepted responsibility for his crimes. *Id.* at 30. The form also required Lile to detail all prior sexual activities, regardless of whether the activities constituted uncharged criminal offenses. *Id.*

Officials informed Lile that if he refused to participate in the program, several of his privileges, including "his visitation rights, earnings, work opportunities, ability to send money to family, canteen expenditures, access to a personal television," would be curtailed. *Id.* at 31. "In addition, [he] would be moved from a two-person to a four-person cell, and he would be in a potentially more dangerous environment." *Id.* Lile refused to participate in the program and subsequently filed a 42 U.S.C. § 1983 lawsuit arguing that the program violated his Fifth Amendment right against self-incrimination. *Id.*

A plurality of the Court found that "[p]rison context or not, [the plaintiff's] choice [wa]s marked less by compulsion than by choices the Court has held give no rise to a self-incrimination claim." *Id.* at 41. The plurality created the following test:

> [a] prison clinical rehabilitation program, which is acknowledged to bear a rational relation to a legitimate penological objective, does not violate the privilege against self-incrimination if the adverse consequences an inmate faces for not participating are related to the program objectives and do not constitute atypical and significant hardships in relation to the ordinary incidents of prison life.

*Id.* at 38.[2] It further elaborated that prison administrators have "the authority to offer inmates various incentives to behave," and that the Constitution accords them "wide latitude to bestow or revoke these perquisites as they see fit." *Id.* at 39. "Acceptance of responsibility is the beginning of rehabilitation. And a recognition that there are rewards for those who attempt to reform is a vital and necessary step toward completion." *Id.* at 47.

"[B]y virtue of their convictions, inmates must expect significant restrictions, inherent in prison life, on rights and privileges free citizens take for granted." *Id.* at 40. There is a distinction between extending a prisoner's term of incarceration, or affecting his good-time credits or parole, and revoking other privileges. *Id.* at 38–39. "Determining what constitutes unconstitutional compulsion involves a question of judgment: Courts must decide whether the consequences of an inmate's choice to remain silent are closer to the physical torture against which the Constitution clearly protects or the *de minimis* harms against which it does not." *Id.* at 41.

Justice O'Connor concurred with the plurality. *Id.* at 48. She agreed that the plaintiff's prison conditions resulting from his refusal to participate in the treatment

---

[2] The court borrowed this test from Fourteenth Amendment jurisprudence, as further explained below.

6

program did not constitute compulsion, and said that the changes seemed "minor." *Id.* at 51. She went on, however, to explicitly reject the plurality's "atypical and significant hardship" test — though she did not propose an alternative test of her own. *Id.* at 48–54. Instead, she only noted that there "is a difference between the sorts of penalties that would give a prisoner a reason not to violate prison disciplinary rules and what would compel him to expose himself to criminal liability." *Id.* at 52. Because there was no majority opinion, Justice O'Connor's concurrence controls.

Here, the plaintiff's claim fails under both the plurality test and Justice O'Conner's concurrence. As in *McKune*, jail administrators recommended that the plaintiff, a convicted sex-offender, participate in a rehabilitation course that required him to take responsibility for his crimes. When he refused, he was not allowed to participate in MOCC's band program or use the band room. Losing access to the band program and band room is not an "atypical and significant hardship" nor is it "the sort[] of penalt[y] that would give a prisoner a reason . . . to expose himself to criminal liability." 536 U.S. at 38, 52. Indeed, the plaintiff lost substantially fewer and less significant privileges than the inmate in *McKune*. *Id.* at 31. Thus, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not alleged a plausible violation of his Fifth Amendment right against self-incrimination.

### B. Fourteenth Amendment Claim

The plaintiff further alleges that "[w]hen inmates are deprived of privileges for opting not to take nonmandatory classes, they are being punished in violation of the due process clause of the fourteenth amendment." (ECF No. 1 at 5). The Fourteenth Amendment bans states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. It is unclear whether the plaintiff is

7

making a substantive or procedural due process claim herein, but he fails under either standard.

"[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct. The conduct must be intended to injure in some way unjustifiable by any government interest." *Newman v. Beard*, 617 F.3d 775, 782 (3rd Cir. 2010) (citations omitted) (internal quotation marks omitted); *see D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016). The defendant's conduct, *i.e.*, banning the plaintiff from utilizing the band room or participating in the band program for not being IRPP compliant, does not shock the conscience. *See Folk v. Attorney Gen. of Pa.*, 425 F. Supp. 2d 663, 671–73 (W.D. Pa. 2006) (holding that the plaintiff "fail[ed] to show that requiring him to successfully complete a sex offenders treatment program or other rehabilitation programs that require[d] [him] to admit guilt is conscience shocking or that such a requirement constitutes behavior that is intended to injure [him] in a way that is unjustifiable by any government interest."). Therefore, the plaintiff's substantive due process claim fails.

"[P]rocedural due process questions [are analyzed] in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989). "[A]n individual claiming a protected interest must have a legitimate claim of entitlement to it." *Id.* "States may create liberty interests which are protected by the Due Process

8

Clause." *Sandin v. Conner*, 515 U.S. 472, 483–84 (1995). These interests, however, are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Thus, in order for the plaintiff to establish the first element of the procedural due process analysis, the court must find that being deprived of band room privileges for opting not to take a rehabilitation class is an atypical and significant hardship in relation to the ordinary incidents of prison life. The court is confident that it is not. *See Tijerina v. Offender Mgmt. Review Comm.*, 91 F. App'x 86, 91 (10th Cir. 2004) (holding that reclassifying a plaintiff to a different privilege level, which resulted in the loss of several privileges, for his refusal to participate in sex therapy was not an atypical or significant hardship); *Reinhardt v. Kopcow*, 66 F. Supp. 3d 1348, 1355–56 (D. Colo. 2014) (holding that restricting canteen, clothing, book, television, radio, gym, and other recreational privileges of inmate who did not complete sex offender treatment program that required him to accept responsibility for his crimes was not an atypical hardship); *see also Grady v. Garcia*, 506 F. App'x 812, (10th Cir. 2013) (holding that taking privileges such as television, radio, and recreation time from inmate for not completing prison program was not an atypical and significant hardship). Therefore, the plaintiff's procedural due process claim also fails.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted and is subject to dismissal under 28 U.S.C. § 1915A.

### C.     The plaintiff's proposed amendment.

As noted above, on June 19, 2018, the plaintiff filed a proposed amendment or supplement to his Complaint in which he attempts to challenge an alleged new policy concerning the housing of nonviolent level 3 classified inmates who have refused to participate in rehabilitation programs or classes with higher security classification inmates.  The plaintiff claims that this is punishment for the refusal to complete the subject classes.  However, to the extent that the plaintiff has even exhausted his administrative remedies concerning this claim, he has not demonstrated any actual injury from this policy.  Rather, he merely speculates that the lower security inmates will suffer beatings and other adverse consequences of being housed with allegedly violent inmates.

The undersigned proposes that the presiding District Judge **FIND** that these allegations are insufficient to establish any plausible claim for relief under either the Eighth or Fourteenth Amendments and, thus, the plaintiff's proposed amendment of his Complaint would be futile.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this matter for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915A.

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(C), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the plaintiff shall have fourteen days (filing of objections) and then three days (service/mailing), from the date of filing this Proposed Findings and Recommendation within which to file with

the Clerk of this Court, specific written objections, identifying the portions of this Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff.

August 30, 2018

Dwane L. Tinsley
United States Magistrate Judge